Electronically Filed - St Louis County - December 29, 2020 - 07:32 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| MATTHEW GAMEWELL, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. |
| LAFAYETTE INDUSTRIES NORTH, INC. | ) Div. |
| SERVE: William Florent<br>179 Gaywood Drive<br>Manchester, Missouri, 63021 | ) |
| Defendant. | ) |

## PETITION

### NATURE OF THE ACTION

This is an action under the Missouri Human Rights Act ("MHRA"), § 213.111, RSMo., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., as amended ("ADA"), and the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and retaliation to provide relief to Matthew Gamewell ("Plaintiff" or "Gamewell"), who was adversely affected by such practices, and to prevent further occurrence of such practices.

As alleged with greater particularity in paragraphs ten (10) through fifty-two (52) below, Plaintiff alleges that Defendant Lafayette Industries North, Inc., ("Lafayette" or "Defendant") unlawfully discriminated against Gamewell when it created a hostile work environment because of his disability, and retaliated against him because of his protected activity in opposing the disability based discrimination he was experiencing.



1

Plaintiff further alleges that his restrictions stemmed from a disability within the meaning of the Americans with Disabilities Act, as amended in 2008, and Defendant constructively discharged him in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. § 12112(a) and § 12112(b)(5)(B) and 42 U.S.C. § 12203(a).

Plaintiff further alleges that Defendant unlawfully retaliated against him because of his request for a reasonable accommodation related to his medical restrictions that stemmed from a disability within the meaning of the Americans with Disabilities Act, as amended in 2008, and Defendant constructively discharged him in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. § 12112(a) and § 12112(b)(5)(B) 42 and U.S.C. § 12203(a).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to its inherent authority to hear state and federal law claims. This action is authorized and instituted pursuant to Section 213.055, Section 213.070, and Section 213.111 of the MHRA, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the Circuit Court of St. Louis County, pursuant to its inherent authority and pursuant to Title VII, 42 U.S.C. §2000e-5(f)(3) and the ADA, 42 U.S.C. §12117(a) and 42 U.S.C. § 12203(a).

## PARTIES

3. Plaintiff, Matthew Gamewell, is a resident of Missouri and a former employee of Defendant, where he worked from 2017 until he was constructively discharged sometime after June 5, 2020, when he was suspended from work and never recalled to work since that day.

4. At all relevant times, Defendant has been doing business in St. Louis County, Missouri

Electronically Filed - St Louis County - December 29, 2020 - 07:32 PM

continuously as a Missouri corporation, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 213.010.8 of the MHRA, Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h), as well as the ADA, 42 U.S.C. § 12111(5) and (7).

6. At all relevant times, Defendant has been a covered entity covered under Section 213.010.8 of the MHRA, Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. On or about May 18, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Human Rights Commission alleging violations of the MHRA and the ADA by Defendant.

8. On or about September 30, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue and the MCHR issue Plaintiff a Notice of Right to Sue on or about December 17, 2020.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. During the months of April, May and June, 2020, Defendant engaged in unlawful employment practices by creating a hostile work environment for Plaintiff because of Plaintiff's protected status as a qualified individual with a disability, and retaliating against Plaintiff for engaging in protected activities and by discriminating against Plaintiff, a qualified individual with a disability, when it constructively discharged him because of his disability, and/or because it regarded him as disabled, and/or because he had a record of disability, in violation of the MHRA, Section 213.055 and Section 213.070, and the ADA, 42 U.S.C. §12112(a) and 12112)b)(5)(B).

11. Lafayette Industries North, Inc. is located in St. Louis County, Missouri. It is a sheltered workshop for persons with disabilities. It has two facilities in the county: North Facility and West Facility. Plaintiff worked in the West Facility, beginning in 2017. His immediate supervisors were

Electronically Filed - St Louis County - December 29, 2020 - 07:32 PM

Kim Lamb, Employee Development Manager, and Rob Libera, the Executive Director of Defendant. Plaintiff, Lamb and Libera all worked in the West Facility.

12. Plaintiff has two disabilities. Plaintiff suffers from an impairment that substantially limits him in the major life activity of seeing because he is blind in his central vision although he can see through his peripheral vision. This constitutes a "disability" under Section 3 of Title I of the ADA, 42 U.S.C. §12102, and under the MHRA. Plaintiff also has Joubert Syndrome. Joubert syndrome is a rare autosomal recessive genetic disorder that affects the cerebellum, an area of the brain that controls balance and coordination. As a result of Plaintiff's Joubert Syndrome, he is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), and the MHRA. Plaintiff has physical impairments, of balance and coordination that impact his ability to walk when coupled with his vision limitations, that substantially limits him in the operation of major bodily functions, including functions of his neurological system. In addition, Plaintiff's physical impairments have substantially limited other major life activities as defined by the ADA and the MHRA, including but not limited to, caring for himself, seeing, walking, standing, bending, and lifting.

13. Plaintiff worked for Defendant for three years and had not been disciplined for any workplace related issues.

14. Because of Plaintiff's disability, he has to pull his pants and underwear all the way to the floor to use the restroom. However, he does not require any assistance when using the restroom.

15. There is both a men's restroom and women's restroom located in the West Facility for employees with a disability to use. There is also an individual use restroom located in the West Facility. Lafayette forced Plaintiff to use the men's restroom, when he could have easily used the individual use restroom.

16. Kim Lamb frequently walked into the men's restroom when Plaintiff was using it. Her walking in on him violated his privacy and made him feel extremely uncomfortable.

17. Plaintiff spoke to his mother, Alice Gamewell, about how uncomfortable this made him feel. Ms. Gamewell spoke to Rob Libera about stopping this behavior. Even though Plaintiff's complaint was brought to the attention of Rob Libera, the Executive Director of Defendant, Kim Lamb continued to walk into the men's restroom when Plaintiff used it.

18. Because of Plaintiff's disability, Defendant required Plaintiff to use a specific restroom, and it is in that restroom in which his workplace privacy was violated on a regular basis. If Plaintiff were able-bodied, he would be allowed to use the individual use restroom and be afforded his privacy.

19. After Plaintiff's mother spoke with Rob Libera and conveyed how uncomfortable he was with the situation, and asked that it stop, Defendant's agents began a course of harassment and retaliation for his protected activity.

20. The following is a timeline of events from the beginning of April, 2020, after Plaintiff's mother spoke to Rob Libera about the situation:

21. On or about April 6, 2020, Kim Lamb followed Plaintiff into the restroom.

22. On or about April 9, 2020, Rob Libera followed Plaintiff into the restroom to see if Plaintiff were using a stall.

23. On or about April 14, 2020, Rob Libera followed Plaintiff into the restroom to see if Plaintiff was using a stall while Kim Lamb was standing by the restroom sink.

24. On or about April 15, 2020, Rob Libera followed Plaintiff into the restroom on two occasions to see if Plaintiff was using a stall.

25. On or about April 15, 2020, Rob Libera told Plaintiff that he looked "'like the devil and should go to hell."

26. On or about April 16, 2020, Rob Libera followed Plaintiff into the restroom and stood by the stall.

27. On or about April 16, 2020, while Rob Libera was greeting the other workers, he stated to

Plaintiff that he will not say hello to Plaintiff anymore.

28. On or about April 17, 2020, Rob Libera followed Plaintiff into the restroom and stood by the stalls.

29. On or about April 20, 2020, Rob Libera followed Plaintiff into the restroom to see if he were using the stall.

30. On or about April 21, 2020, Rob Libera blocked the restroom door as Plaintiff attempted to go into the restroom and said to Plaintiff, "I do not care what you think," in regard to him being present while he used the restroom.

31. On or about April 22, 2020, Rob Libera told Plaintiff on two occasions that he cannot wait for Plaintiff to leave Lafayette Industries, Inc.

32. On or about April 22, 2020, Rob Libera was in the restroom as Plaintiff attempted to use it.

33. On or about April 23, 2020, Rob Libera stated, "I cannot wait until you are fired from Lafayette Industries."

34. On or about April 23, 2020, Rob Libera stated to Plaintiff, while he was using the restroom, "'I am going to take a picture of you."

35. On or about April 25, 2020, Plaintiff's attorney from Missouri Protection and Advocacy Services, Thomas Herring, sent a cease and desist letter to Lafayette. (The letter was delivered on April 27, 2020, and the letter also filed a grievance according to Lafayette's policies).

36. On or about April 28, 2020, Kim Lamb told Plaintiff that Plaintiff was a "'slacker and do not work hard enough."

37. On or about April 29, 2020, Plaintiff heard Kim Lamb say, "I can't wait until Matt's butt is gone."

38. On or about April 30, 2020, Plaintiff heard Kim Lamb say, "I can't wait until Matt is out of Lafayette" and that "Matt needs to leave Lafayette."

6

39. On or about April 30, 2020, as Plaintiff was entering the restroom stall, Rob Libera stood in front of Plaintiff in his central vision, which caused Plaintiff to bump into him (this occurred on two occasions during the same restroom break – before Plaintiff entered the stall and after he left the stall)."

40. On or about April 30, 2020, Plaintiff heard Rob Libera say, "I am going to take a picture of Matt when he is not looking."

41. On or about May 1, 2020, Plaintiff heard Rob Libera say that he was "going to take a picture of Matt."

42. On or about May 1, 2020, Rob Libera told Plaintiff "I was a jerk."

43. On or about May 1, 2020, when Plaintiff was at lunch, Rob Libera stated to him, "I have a bone to pick with you."

44. On or about May 1, 2020, on two occasions, Kim Lamb relayed to Plaintiff that it would be better if he were not at Lafayette.

45. On or about May 5, 2020, Plaintiff heard Rob Libera say, "Matt is a jerk" and to not believe him."

46. On or about May 5, 2020, Kirn Lamb told Plaintiff that he should "go to hell," that I am "'a bastard," and that she "cannot wait until you are dead and in your grave."

47. On or about May 5, 2020, Plaintiff went to the Emergency Room because he was suffering from severe panic attacks due to Lafayette's treatment toward Plaintiff.

48. On or about May 7, 2020, Plaintiff heard Kim Lamb say that she wishes he "was dead" and "in his coffin."

49. On or about May 7, 2020, Plaintiff heard Rob Libera say he was going to "follow him" into the restroom.

50. On or about May 13, 2020, Plaintiff was told that he cannot stand while at his workstation and that he need to be sitting. (Plaintiff has scoliosis in his back and has always gone back and forth

7

between sitting and standing to relieve the back pain).

51. On or about May 13, 2020, Josiah Shedd, an able-bodied employee, physically stopped Plaintiff and searched his personal side bag that is attached to his belt (Plaintiff always wears a bag when he is at work and did so while he was employed at Lafayette. This bag contains personal belongings and is his personal property).

52. On or about June 5, 2020, Defendant suspended Plaintiff from his position and has not returned him to work since that date despite inquiry by Plaintiff's family regarding his employment status.

53. Because of Plaintiff's disability, Lafayette required him to use a restroom in which his personal privacy was violated, even though he does not need assistance with toileting. After making his concerns known to Lafayette, and after filing a grievance according to Defendant's policies, Lafayette escalated its offensive behavior towards Plaintiff, which is unlawful retaliation for his protected activity in opposing disparate treatment based upon disability, including, but not limited to his suspension on or about June 5, 2020.

54. All of the acts taken by Defendant described above is discrimination due to Plaintiff's blindness and Joubert Syndrome, which are qualifying ADA and MHRA disabilities, and retaliation for having participated in protected activities and is all in violation of the ADA and Title VII, and the MHRA, as amended.

55. The effect of the practices complained of in paragraphs ten (10) through fifty-two (52) above has been to deprive Plaintiff, an employee covered by the ADA and Title VII, and the MHRA of equal employment opportunities and otherwise adversely affected his status as an employee because of his disability.

56. The unlawful employment practices complained of in paragraphs ten (10) through fifty-two (52) above were and are intentional.

57. The unlawful employment practices complained of in paragraphs ten (10) through fifty-two (52) above were done with malice or with reckless indifference to the protected rights of the Plaintiff.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on disability, including the denial of reasonable accommodations to qualified individuals with disabilities.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendant to make whole Plaintiff by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, front pay and reinstatement.

D. Order Defendant to make whole Plaintiff by by providing appropriate compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs ten (10) through fifty-two (52) above, including, but not limited to, job search expenses, and medical expenses, and other pecuniary losses, in amounts to be determined at trial.

E. Order Defendant to make whole Plaintiff by providing appropriate compensation for past and future non pecuniary losses resulting from the unlawful employment practices described in paragraphs ten (10) through fifty-two (52) above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and other non pecuniary losses in amounts to be determined at trial.

Electronically Filed - St Louis County - December 29, 2020 - 07:32 PM

F. Order Defendant to pay Charging Party punitive damages for its malicious and reckless conduct described in paragraphs ten (10) through fifty-two (52) above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award Plaintiff his attorney's fees and her costs of this action as the prevailing party in this matter.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by his Petition.

Respectfully submitted,

*/s/ Matthew J. Ghio*

By: _____
Matthew J. Ghio, Bar #44799MO
GHIO LAW FIRM, LLC
3115 S. Grand Blvd, Suite 100
St. Louis, MO 63118
Phone: (314) 707-5853
Fax:    (314) 732-1404
matt@ghioemploymentlaw.com
ATTORNEYS FOR PLAINTIFF

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| MATTHEW GAMEWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause No. 21SL-CC00023 |
| | ) |
| LAFAYETTE INDUSTRIES NORTH, | ) Div. |
| INC. | ) |
| | ) |
| SERVE: William Florent | ) |
| 179 Gaywood Drive | ) |
| Manchester, Missouri, 63021 | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM TO THE CLERK

Please issue Summons in the name of the registered agent above.

Respectfully submitted,

*/s/ Matthew J. Ghio*

By: _____
Matthew J. Ghio, Bar #44799MO
GHIO LAW FIRM, LLC
3115 S. Grand Blvd, Suite 100
St. Louis, MO 63118
Phone: (314) 707-5853
Fax:    (314) 732-1404
matt@ghioemploymentlaw.com
ATTORNEYS FOR PLAINTIFF



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>NANCY WATKINS MCLAUGHLIN | Case Number: 21SL-CC00023 | |
|---|---|---|
| Plaintiff/Petitioner:<br>MATTHEW GAMEWELL<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MATTHEW JOHN GHIO<br>GHIO LAW FIRM LLC<br>3115 S GRAND, SUITE 100<br>ST LOUIS, MO 63118 | **SHERIFF FEE PAID** |
| Defendant/Respondent:<br>LAFAYETTE INDUSTRIES NORTH INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: LAFAYETTE INDUSTRIES NORTH INC.
               Alias:
179 GAYWOOD DRIVE
MANCHESTER, MO 63021



*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
  SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

29-MAR-2021
Date

_____
Clerk

Further Information:
AW

### Sheriff's or Server's Return
Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server           Signature of Sheriff or Server
  **Must be sworn before a notary public if not served by an authorized officer:**
  Subscribed and sworn to before me on _____ (date).
(Seal)
  My commission expires: _____       _____
                               Date                    Notary Public

| | | |
|---|---|---|
| **Sheriff's Fees, if applicable** | | |
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-99) SM30 (SMCC) *For Court Use Only:* **Document ID# 21-SMCC-2786**    3    (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 21-SMCC-2786**   4   (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

# County Satellite Court Now Open in St. Ann
### Hours: Mon-Fri  8:30 a.m. to 5:00 p.m.   FREE PARKING

For the convenience of North County residents, a satellite branch of the St. Louis County Circuit Court is now open at the St. Louis County Government Center Northwest at the 715 Northwest Plaza Drive in St. Ann.

**Attending Court Hearings Remotely using E-Courts**
If you are scheduled to appear in court, you can access the courtroom remotely using the public computer stations (E-courts) in St. Ann and Clayton. These are available for use when courtroom access is restricted due to the pandemic.

**Please note:** Hearings for juvenile and paternity cases are confidential, and can only be accessed from the Clayton E-court at this time.

**Be sure to bring your paperwork with you; you will need your case number, as well as the date, time and number of the Division where you are scheduled to appear.**

**Filing Pleadings/New Petitions**
If you are representing yourself, you may file your paperwork at the St. Ann satellite court, in addition to the Clayton courthouse, using the secure drop box located inside the Court reception area.

**Filing Orders of Protection**
Starting March 1, you may file for an Order of Protection at the Adult Abuse office in the St. Ann satellite court, in addition to the Clayton courthouse.  Clerks will be available on-site to help you fill out and file the necessary paperwork.

**For more information call: 314-615-8029**



Sherry *Return* SB 4/28

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>NANCY WATKINS MCLAUGHLIN | Case Number: 21SL-CC00023 | |
|---|---|---|
| Plaintiff/Petitioner:<br>MATTHEW GAMEWELL | Plaintiff's/Petitioner's Attorney/Address<br>MATTHEW JOHN GHIO<br>GHIO LAW FIRM LLC<br>3115 S GRAND, SUITE 100<br>ST LOUIS, MO 63118 | SHERIFF FEE PAID |
| vs. | | |
| Defendant/Respondent:<br>LAFAYETTE INDUSTRIES NORTH INC.<br>Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: LAFAYETTE INDUSTRIES NORTH INC.
Alias:

179 GAYWOOD DRIVE
MANCHESTER, MO 63021

17 WHITL W

COURT SEAL OF
ST. LOUIS COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

29-MAR-2021
Date

_Joan M. Gilmer_
Clerk

APR 26 2021

Further Information:
AW

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
Sherry (name) Clerk (title).
☐ other _____

Served at 179 Gaywood Drive (address)
in St. Louis (County/City of St. Louis), MO on 4-28-21 (date) at 3:45 (time).

L.B. Whitfield
Printed Name of Sheriff or Server


Signature of Sheriff or Server

2021 APR 28 AM 10:14
ST. LOUIS COUNTY SHERIFF OFFICE
RECEIVED

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).
(Seal)
My commission expires: _____
Date        Notary Public

**FILED**
APR 30 2021
JOAN M. GILMER
CIRCUIT CLERK, ST LOUIS COUNTY



OSCA (7-99) SM30 (SMCC) *For Court Use Only:* Document ID# 21-SMCC-2786    1    (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo